UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES LITTLE,

      Plaintiff,                         Civil Action No. 05-72780

v.                                   HON.  GEORGE CARAM STEEH
                                   U.S. District Judge
                                   HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff James Little brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits (DIB) under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

**PROCEDURAL HISTORY**

      On January 19, 2001,  Plaintiff filed an application for Disability Insurance Benefits (DIB),  alleging onset of disability on August 1, 1997 (Tr.  56-58).  After the initial denial of his claim, Plaintiff filed a timely request for an administrative hearing, conducted on

November 26, 2002 before Administrative Law Judge (ALJ)William Musseman[1] (Tr. 517).

In a January 29, 2003 decision, ALJ Musseman found that Plaintiff retained the capacity to

perform a limited range of light work (Tr. 363). Upon reviewing medical records submitted

after the administrative decision's release, the Appeals Council vacated ALJ Musseman's

decision on October 24, 2003, remanding the case for reconsideration based on ALJ

Musseman's failure to explain discrepancies between his Residual Functional Capacity

(RFC) determination and an RFC created in the original 1999 decision (see FN 1).

*Acquiscence Ruling* (AR) 98-4(6) (Tr. 370-372).

On June 2, 2004, ALJ Douglas N. Jones held a rehearing in Flint, Michigan (Tr. 540).

Plaintiff, represented by attorney Mikel Lupisella, testified (Tr. 543-560), as did Vocational

Expert (VE) Timothy Shaner (Tr. 560-564). ALJ Jones found on October 28, 2004 that

although Plaintiff was not able to resume his past relevant work, he retained the ability to

perform a significant range of light work (Tr. 26). On May 27, 2005 the Appeals Council

denied review (Tr. 7-9). Plaintiff filed for judicial review of the final decision on July 15,

2005.

## **BACKGROUND FACTS**

Plaintiff, born November 4, 1949, was age 54 when the ALJ issued his decision  (Tr.

56). He completed a Bachelor's degree and worked formerly as an auto assembler (Tr. 67,

72). Plaintiff alleges disability due to depression, low back pain, and knee problems (Tr. 66).

---

[1]An earlier October, 6, 1999 administrative decision found that Plaintiff was not
disabled, establishing *res judicata* as of October 7, 1999 (Tr. 517).

### A.      Plaintiff's Testimony

Plaintiff testified that he lived in Fenton, Michigan in a one story, single-family dwelling with his wife and stepdaughter (Tr. 543-244).  He reported obtaining a college degree and approximately nine hours of graduate work (Tr. 543).  He stated that he had not worked since August, 1997, but received total permanent disability from General Motors along with a one-time payment from Worker's Compensation (Tr. 545).

Plaintiff acknowledged that he continued to drive approximately seven times a week, testifying that he drove to church, AA meetings, and shopping (Tr. 547).  He reported that he and his family had traveled to Tennessee and northern Michigan the previous summer (Tr. 547).  He indicated that he and his wife took turns driving (Tr. 558).

Plaintiff reported that he had not seen his treating neurologist, Dr. Awerbuch (sic) in some time (Tr. 547).  He indicated that he continued to see his psychiatrist approximately every eight weeks (Tr. 548).  He reported that in 1996 he participated in an outpatient program, receiving mental health treatment four times a month (Tr. 550).  He stated that he had abstained from alcohol for the past 16 years, indicating  that he successfully completed an outpatient rehabilitation program in 1988 (Tr. 551).

Plaintiff,  6'2" and weighing approximately 245 pounds, opined that since leaving work in 1997, his condition had remained essentially unchanged, adding that he experienced left knee pain requiring injections and physical therapy three times a week (Tr. 544, 553).  He reported that his medication, including Lexapro, Vioxx, Astelin, Bactroban, and Seroquel created periodic fatigue (Tr. 553-554).  He testified that he attended church twice a week and

AA meetings three times a week but did not belong to any clubs or social organizations (Tr. 554-555). He reported that his wife grocery shopped and completed household chores, but he assisted her with yard work (Tr. 555). He indicated that he slept restlessly and had been recently diagnosed with sleep apnea (Tr. 555).

Plaintiff estimated that he could stand or walk for up to 30 minutes, sit for an hour, and lift up to 10 pounds (Tr. 556). He alleged difficulty bending, squatting, and reaching overhead (Tr. 558). He stated that he did not experience difficulty buttoning or zipping clothes; opening jars; or turning doorknobs, but opined that he could not perform repetitive manipulative activities due to an arthritis-type condition affecting his hands (Tr. 559). He indicated that his depression had decreased since 1999, attributing his improvement to medication and his lack of work stress (Tr. 559). He stated that he did not respond well to stress, noting that when he became depressed, he experienced lethargy and confusion (Tr. 559).

### B.    Medical Evidence[2]

In July, 1996, Plaintiff underwent treatment at McLaren Regional Medical Center for major depression (Tr. 114). Treatment notes from November, 1996 indicate that he continued to experience depression (Tr. 126).

In September, 1998 Matthew L. Lyberg, ACSW, CRPS treated Plaintiff for continued

---

[2]As discussed in footnote 1, an earlier administrative opinion determined that Plaintiff was not disabled up to October 6, 1999. Therefore, discussion of medical records created prior to that date are included for background purposes only.

depression and bipolar disorder (Tr. 170). Lyberg's notes state that Plaintiff's recurrent depression had contributed to substance abuse problems, including the use of alcohol, prescription drugs, and nicotine (Tr. 172, 174). He assigned Plaintiff a GAF of 61[3] (Tr. 175). Notes from a December, 1998 therapy session indicate that Plaintiff felt he was progressing (Tr. 156). In February, 1999, Plaintiff reported that he was planning to marry his girlfriend (Tr. 153). Plaintiff continued to seek mental health treatment over the next several months for relationship issues (Tr. 132-150). In May, 2000 Plaintiff received chiropractic treatment for muscle cramps (Tr. 178). In July, 1999, imaging tests performed on Plaintiff's right hand showed an absence of osseous or joint abnormality (Tr. 237). In November, 1999, similar tests performed on his lumbosacral spine showed only minimal to mild degenerative changes (Tr. 236). Nerve conduction studies conducted on Plaintiff's lower limbs in May, 2000 were also negative (Tr. 235). Results of an MRI performed the same month showed  mild lumbar spondylosis, but otherwise normal results (Tr. 234). Gavin I. Awerbuch, M.D., diagnosed Plaintiff with chronic mechanical lower back pain secondary to repetitive overuse (Tr. 251). In June, 2000, Dr. Awerbuch noted further that Plaintiff complained of swelling of the right hand finger joints and pain from an abscessed tooth (Tr. 249). He advised Plaintiff to "limit activities to tolerance," and refilled a prescription (originally written by Plaintiff's dentist) for Tylenol #3 (Tr. 249). Plaintiff's treating physician, Donald J. Hardman, noted in July,

---

[3]GAF scores in the range of 61-70 indicate "some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 32 (*DSM-IV-TR* ), 30 (4th ed.2000).

2000 that he continued to experience back pain and that he had received recent steroid injections (Tr. 290). In September, 2000 imaging studies showed a "clear chest," noting further that Plaintiff's heart size had remained unchanged since earlier studies performed in April, 1998 (Tr. 233). In November, 2000 Plaintiff reported to Dr. Awerbuch that he had begun working with a personal trainer and massage therapist (Tr. 248). In January, 2001, Dr. Hardman, recommending a change in Plaintiff's Viagra dosage, noted that his depression had been stabilized (Tr. 285). In February, 2001, Plaintiff indicated that he continued to experience back pain as well as problems bending, twisting, and walking (Tr. 247). He expressed interest in seeing a dietician for the purposes of starting a weight loss program (Tr. 247). Needle conduction studies performed the same month showed normal results (Tr. 244).

A Residual Functional Capacity Assessment performed in March, 2001 by a Disability Determination Services (DDS) examiner determined that Plaintiff retained the ability to lift 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for six hours in an eight-hour shift; along with unlimited abilities to push or pull (Tr. 201). The report found further that Plaintiff was limited to occasional ramp and stair climbing along with occasional balancing, stooping, kneeling, crouching, and crawling, but precluded from all climbing of ladders, ropes, or scaffolds (Tr. 202). The report also found that Plaintiff did not experience manipulative, visual, communicative, or environmental limitations (Tr. 203-204). The examiner, noting that spinal x-rays had found only mild degenerative findings and that Plaintiff admitted that he continued to ski and golf, found his allegations of disability "partially credible" (Tr. 205).

-6-

The same month,  Plaintiff's long term psychiatrist Sachin Nagarkar, M.D., opined that his "severe resistant depression" made him "totally and permanently disabled for any kind of work" (Tr. 257).   A mental consultive examination performed by Leonard Balunas, Ph.D., the following month noted that Plaintiff reported sporadic sleeping and eating habits due to ongoing depression (Tr. 208).   Plaintiff characterized his present life as "more ordered" than in the past when he experienced substance abuse (Tr. 209).   Dr. Balunas assigned Plaintiff a GAF of 55[4] (Tr. 211).

A Mental Residual Functional Capacity Assessment also performed in April, 2001 found that Plaintiff did not experience significant limitations pertaining to understanding, memory, and adaptation (Tr. 213).  Plaintiff's ability to maintain attention and concentration for extended periods was deemed moderately limited (Tr. 213).  Likewise, the report found that Plaintiff did not possess significant limitations in social interaction, with the exception of a moderate limitation in his ability to accept instructions and respond appropriately to criticism from supervisors (Tr. 214).  The report concluded that Plaintiff retained the ability to perform unskilled work (Tr. 215).

A Psychiatric Review Technique (PRT) performed on the same day found that Plaintiff experienced periodic sleep disturbance, and difficulty concentrating or thinking as a result of a bipolar disorder (Tr. 220).  The same report found that Plaintiff experienced mild

---

[4]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace (Tr. 227). The report concluded that Plaintiff's allegations of "non-functioning" did not "stand up under scrutiny," commenting that Plaintiff's mental health records and reported activities of daily living (ADL) did not support his claims (Tr. 229).

In May, 2001, Plaintiff reported an exacerbation of his condition after experiencing sharp back pains while golfing, but indicated that he believed that his condition was improving (Tr. 246). He declined Dr. Awerbuch's suggestion that he undergo further tests (Tr. 246). Dr. Awerbuch re-prescribed Tylenol #3 along with a prescription for Skelaxin (Tr. 246). In September, 2001, Dr. Nagarkar noted that Plaintiff had begun coaching his stepdaughter's soccer team (Tr. 256). Dr. Nagarkar's notes from a December, 2001 appointment indicate that Plaintiff continued to golf and ski (Tr. 255). Imaging and MRI studies performed in the first two months of 2002 showed no significant changes from similar tests conducted in 2000 (Tr. 231-232). In February, 2002, Dr. Hardman commented that Plaintiff's "manic depression was well controlled," noting that he still complained of chronic low back pain (Tr. 345). Dr. Awerbuch concluded that needle conduction studies performed in March, 2002 of Plaintiff's lower limbs suggested "a right ilioinguinal neuropathy" (Tr. 243). He opined that Plaintiff appeared "to be getting better with conservative care," adding that he did not believe he was capable of working on a regular basis (Tr. 242). Physical therapy records from the same month indicate that Plaintiff experienced a decrease in the intensity of his symptoms (Tr. 252-253).

Treatment notes by Maxwell Taylor, Ph.D., indicate that Plaintiff continued to experience depression related to marital problems from March to November of 2002 (Tr. 424-436). Plaintiff also reported to Charles Salfley, M.D., that he experienced left knee pain (Tr. 456). Dr. Safley noted that Plaintiff admitted to skiing and golfing, but stated that knee problems had recently made golfing more difficult (Tr. 456). In November, 2002, Plaintiff reported foot pain and swelling, telling orthopedic surgeon Susan M. Mosier-LaClair, M.D., that he experienced foot swelling when performing his part-time job (Tr. 447). Dr. Mosier-LaClair concluded that Plaintiff experienced a symmetric congenital pel planus alignment of both feet (Tr. 447). She prescribed orthotics to support his foot joints and encouraged him to continue to take his osteoarthritic medication (Tr. 448). Imaging of Plaintiff's cervical and lumbar spine showed "marked" disc space narrowing at the C5-C6 and C6-C7 levels and "mild" disc space narrowing at the L2-L3 and L3-L4 levels (Tr. 468). Whole body imaging performed a few days later showed indications of osteoarthritis (Tr. 469).

In January, 2003, Dr. Hardman noted that a recent MRI showed "marked arthritis in the C5 and C6 distribution" (Tr. 401). In February, 2003, Dianne K. Trudell, M.D., noting that Plaintiff experienced generalized osteoarthritis involving hands, as well as the cervical and lumbar spine, recommended that Plaintiff restart Vioxx and continue physical therapy (Tr. 420). She proposed seeing Plaintiff on an "as needed" basis (Tr. 420). In March, 2003, Plaintiff complained of a runny nose (Tr. 417). Dr. Hardman prescribed Singulair for allergies and re-prescribed Meridia for Plaintiff's obesity (Tr. 417). Imaging tests conducted of Plaintiff's heart in May, 2003 showed normal results (Tr. 413). An MRI performed on the

lumbosacral spine in November, 2003 showed "mild degenerative changes" (Tr. 404).

In March, 2004, M. Idrees Zahoor, M.D., diagnosed Plaintiff with "mild obstructive sleep apnea, recommending the use of a CPAP[5] (Tr. 481). Dr. Zahoor, noting that Plaintiff exhibited "[n]ormal bulk and tone in all muscle groups" and a full range of motion, recommended that Plaintiff lose weight (Tr. 479).

### C.    Vocational Expert Testimony

VE Timothy Shaner, stating that his testimony comported with information contained in the Dictionary of Occupational Titles (DOT), indicated that his findings represented the geographical scope of the lower peninsula of Michigan (Tr. 560-561). ALJ Jones posed the following question to the VE:

> "If I were to ask you to assume a hypothetical individual who is of the claimant's age at the end of last year, which was the same as it is now, 54 years old, who had a college education and the work experience that you've indicated in Exhibit B-12E, who is able to perform only light work involving only occasional bending at the waist or occasional bending at the knees or occasional twisting of the torso, occasional kneeling, but no crawling, occasional climbing of stairs, no climbing of ladders and only occasional exposure to unprotected heights or intrinsically hazardous uncovered moving machinery and only occasional overhead reaching with the non-dominant left arm, and no constant repetitive hand movements, and also no extended periods of concentration or attention. I define extended period for the purposes of this question as being no more than 15 minutes would be required to come to mentally understand and actively mentally process any given task, that there could be a number of tasks to do during the day. And it would involve only occasional interactions with supervisors or members of the general public; only occasional changes in work setting or procedure; only

---

[5]As noted by the ALJ, Plaintiff was eligible for benefits through the end of 2003. Dr. Zahoor's observations, first made in February, 2004, cannot be used to support Plaintiff's disability claims.

occasional independent planning or decision making; and no very high – no very close supervision or high qualitative standards as part of a – the job just wouldn't feature a need to have close supervision or to produce work that met unusually high qualitative standards. Would such a person be able to perform the claimant's past job either as he actually performed it or as it generally exists in the national economy?"

(Tr. 562).

The VE replied that based on the above hypothetical, Plaintiff could not resume his former unskilled work as an auto assembler based on the position's need for constant and repetitive hand movements (Tr. 399, 562). However, he found that Plaintiff could perform other light, unskilled jobs, including positions as an inspector (8,000 jobs), laundry worker (6,100), file clerk (4,600), and gate guard (6,000) (Tr. 563). In response to attorney questioning, the VE stated that the gate guard position would be eliminated if Plaintiff were given a discretionary (at will) sit/stand option (Tr. 563).

### D.   The ALJ's Decision

Citing Plaintiff's medical records, ALJ Jones found that Plaintiff's impairments of generalized osteoarthritis; degenerative disc disease of the lumbar and cervical spine with chronic mechanical back pain; bilateral congenital pes planus deformity; right shoulder tendonitis; status post ACL repair, left knee; status post repair of severed tendon 5th digit left hand; bi-polar disorder; a history of drug and alcohol abuse (in remission since 1989); and a history of prescription drug abuse were "collectively 'severe' within the meaning of the Regulations, but . . . not sufficiently severe to meet or medically equal the criteria of any

impairment, or combination of impairments, contained in the Medical Listings"[6] (Tr. 22).

He found that Plaintiff retained the  RFC to perform:

"Light work that involves no crawling, climbing[,] ladders, using vibrating hand tools, constant repetitive wrist movements, extended periods of concentration, very high quality standards or close tolerances and no more than occasional bending at the waist or knees, twisting the torso, climbing stairs, working with exposure to unprotected heights or hazardous machinery, interacting with supervisors, adapting to changes in work setting or procedures or making independent decisions/planning"

(Tr. 25-26).

The ALJ, determining that Plaintiff's alleged degree of limitations stood unsupported by objective medical evidence, found his claims "not fully credible" (Tr. 23, 25).  He noted that Plaintiff's impairments had not required "surgical intervention, hospitalization, or other types of aggressive treatment" (Tr. 23).  He noted further that Plaintiff regularly drove, performed yard work, golfed, worked with a personal trainer, and attended AA meetings and church services (Tr. 23).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable

---

[6]The ALJ noted that Plaintiff did not experience obstructive sleep apnea or left triceps impairment before January 1, 2004, and that he was only eligible for DIB benefits through December 31, 2003 (Tr. 22, 25).

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has

the burden of proof as steps one through four, but the burden shifts to the Commissioner at

step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Medical-vocational Rule 201.12

Plaintiff, 54, argues that the ALJ erred in  finding that he could perform work at the

light rather than sedentary exertional level.  He maintains that if the ALJ had properly found

him capable of only sedentary work, Medical-Vocation Rule 201.12 would have directed a

finding of disabled because he is closely approaching advanced age.  *Plaintiff's Brief* at 6.

20 CFR § 404.1563 (d) states, "If you are closely approaching advanced age (age 50-

54), we will consider that your age along with a severe impairment(s) and limited work

experience may seriously affect your ability to adjust to other work." A finding that a

claimant closely approaching advanced age with skills analogous to Plaintiff's could perform

only sedentary work would generally direct a finding of disabled.  "The 'grid,' Pt. 404,

Subpt. P, App. 2, directs a finding of disabled if plaintiff had a residual functional capacity

(RFC) for sedentary work, § 201.09, but not if his RFC is light. § 202.10."[7]  *Davis v.*

---

[7]20 C.F.R. § 404.1567 (b) states in pertinent part that light work "involves lifting no
more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10
pounds. Even though the weight lifted may be very little, a job is in this category when it
requires a good deal of walking or standing, or when it involves sitting most of the time with

*Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986).

Pursuant to 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.12, Plaintiff notes correctly that due to his age, if he were limited to sedentary work, he would most likely be deemed disabled under the Grids.  However, Plaintiff bases that claim on the false premise that he is capable of only sedentary work.

Substantial evidence, cited by the ALJ, supports his finding that Plaintiff could perform light as well as sedentary work.  The RFC stated in the administrative decision is substantially similar to the conclusions of a Residual Functional Capacity Assessment conducted in March, 2001 which found that Plaintiff could perform light work (Tr. 24, 201). The ALJ permissively rejected portions of the transcript which contradicted this finding, including Dr. Awerbuch's statement that Plaintiff could not lift more than 10 pounds.  He noted that other portions of Dr. Awerbuch's own treating records contradicted that finding, reporting that Plaintiff played golf and worked with a personal trainer (Tr. 23-24, 246, 248). Further, the ALJ pointed out that Plaintiff's conditions had "not required surgical intervention, hospitalization, or other types of aggressive treatment" (Tr. 23).

The transcript contains additional evidence to support the ALJ's finding.  Plaintiff acknowledged in April, 2001 that his life had become "more ordered" in recent years (Tr. 209).  A Psychiatric Review Technique concluded that his claims that he was non-functional "did not stand up under scrutiny," noting that Plaintiff admitted that he attended regular AA

---

some pushing and pulling of arm or leg controls."

-15-

meetings, golfed, skied, read, paid bills, and performed yard work (Tr. 229). Plaintiff alleged that he could not cope with stress, but acknowledged to Dr. Nagarkar in September, 2001 that he had begun coaching his stepdaughter's soccer team (Tr. 256). In November, 2002, he mentioned to Dr. Mosier-LaClair that he currently held a part-time job, which also stands at odds with his allegations that he was completely incapacitated by back trouble and depression (Tr. 447). Accordingly, the ALJ's finding that Plaintiff could perform a significant range of light exertional work should not be disturbed.

Likewise, Plaintiff's related argument that the current ALJ did not comply with the requirements of Acquiescence Ruling 98-4 (codifying this circuit's decision in *Drummond v. Commissioner of Social Security Administration*, 126 F.3d 837 (6th Cir. 1977)) is without merit. As stated above, this case was remanded by the Appeals Council based on ALJ Musseman's failure to explain discrepancies between his Residual Functional Capacity (RFC) determination and an RFC created in 1999 decision (Tr. 370-372). However, the current decision by ALJ Jones does not contain such an error. ALJ Jones accounts for the elimination of the sit/stand option and restriction to one to three-step tasks set out in the 1999 decision. He noted that Plaintiff admitted to driving daily and had not recently undergone aggressive medical treatment (Tr. 22). He noted further that Plaintiff's MRI and imaging results showed degenerative changes apparently attributable to the normal aging process (Tr. 23).

Although Plaintiff argues that the "degenerative changes" noted in recent test results support his contention that his condition has worsened rather than improved since 1999,

substantial evidence, as noted above, amply supports the opposite conclusion.  Plaintiff's admitted activities of recent years, such as skiing, golfing, and driving for extended periods on family vacations contradict his assertion that his condition is unchanged or worse.  Similarly, his acknowledgment that he works part-time and coaches a soccer team belies his claim that he does not retain the psychological capacity to cope with the demands of unskilled, light work.

I note in closing that despite Plaintiff's allegations of disability, his medical and counseling records, along with his testimony, portray an individual engaged in a variety of mentally and physically challenging activities on a regular basis.  Based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative level.  Pursuant to *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.  1986)(en banc), the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend  that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with

-17-

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: April 27, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 27, 2006.


S/Gina Wilson
Judicial Assistant